**Citation # 2**
**871 a2d 347**

** Exhibit 'B' **

State v. Jacques Gautier.

No. 2004-165-C.A.

SUPREME COURT OF RHODE ISLAND

871 A.2d 347; 2005 R.I. LEXIS 62

April 12, 2005, Opinion Filed

**PRIOR HISTORY: [**1]** Appeal from Superior Court. Providence County. Judge Susan E. McGuirl. (P1/03-199A). State v. Gauthier, 774 A.2d 882, 2001 R.I. LEXIS 177 (R.I., 2001)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** A grand jury indictment charged defendant with murder, burglary, kidnapping, felony assault, eluding police, and violation of a no-contact order. Defendant moved to dismiss the murder count. Defendant argued that the State was collaterally estopped from prosecuting him for murder based upon facts found at his first probation revocation hearing. The Superior Court, Providence County, Rhode Island denied the motion to dismiss. Defendant appealed.

**OVERVIEW:** The highest court summarized probation revocation hearing principles and overruled the part of the Chase doctrine, in State v. Chase, 588 A.2d 120 (R.I. 1991), that was inconsistent with its opinion in the instant case. At defendant's first probation revocation hearing, a judge concluded that he was not convinced that defendant murdered the victim. Upon remand, the judge concluded defendant's probation was revoked and, as instructed, did not make innocence/guilt fact findings. Therefore, the judge's final probation revocation decision did not find facts upon which collateral estoppel could be based. Collateral estoppel and double jeopardy did not bar the State from prosecuting the murder charge even if, arguendo, the judge had made fact findings. A probation revocation hearing was considered a continuation of the trial for the crime for which defendant was on probation. Defendant was not provided the full panoply of procedural safeguards. The State had to prove by "reasonably satisfactory evidence" that defendant was lacking in the good behavior required to stay on probation; the State did not have to prove "beyond a reasonable doubt" that defendant was guilty of murder.

**OUTCOME:** The highest court affirmed the order that denied defendant's motion to dismiss the murder charge.

**CORE TERMS:** probation-revocation, probation, chase, notice, murder, violator, innocence, collateral estoppel, final judgment, guilt, criminal trial, double jeopardy, probationary status, stolen vehicle, good behavior, murdered, jeopardy, probation-violation, non-violation, prosecuting, arrested, sentence, stabbed, kitchen, doctrine of collateral estoppel, factual determination, criminal prosecution, relitigating, relitigation, misconduct

**LexisNexis(R) Headnotes**

Criminal Law & Procedure > Sentencing > Alternatives > Probation
HN1 See R.I. Super. Ct. R. Crim. P. 32(f).

Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN2 The appropriate role of a hearing justice is to determine only whether in the hearing justice's discretion the defendant's conduct on the day in question was lacking in the required good behavior expected and required by his probationary status, and not to determine the validity of the specific charge that formed the basis of the violation.

Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN3 In a probation-revocation hearing, the only relevant question before the hearing justice is whether a defendant was lacking in the required good behavior expected and required by his probationary status, and not whether the State has satisfactorily proven the defendant's criminal guilt for the charges forming the basis of alleged violation.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel
Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN4 The Supreme Court of Rhode Island overrules that portion of its decision State v. Chase, 588 A.2d 120 (R.I. 1991), which established that specific findings on a material matter of fact fully litigated at a probation-revocation hearing will collaterally estop the State from attempting to prove the same fact at a subsequent criminal trial.

Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN5 The sole purpose of a probation-revocation hearing is to determine whether a defendant has breached a condition of the existing probation, not to convict a defendant for a new criminal offense.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel
Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN6 A defendant is not twice placed in jeopardy for the same offense when the facts litigated at a probation-revocation hearing are later used to support a criminal prosecution.

Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN7 A court's role in a probation-revocation proceeding is not to determine a defendant's criminal guilt or innocence with respect to the underlying conduct that triggered the violation hearing, but rather, to determine whether the defendant has breached a condition of his probation by failing to keep the peace or remain on good behavior.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel
Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN8 Because it is not appropriate for a hearing justice in probation-revocation proceedings to make factual determinations of guilt or innocence on the charges which form the basis of the alleged violation, the Supreme Court of Rhode Island believes that its holding in State v. Chase, 588 A.2d 120 (R.I. 1991), governing the preclusive effect of such findings and conclusions is inconsistent and confusing to both practitioners and criminal defendants alike.

Governments > Courts > Judicial Precedents

HN9 Although stare decisis serves a profoundly important purpose in Rhode Island's legal system, overruling precedent is justified if the motivating purpose is to eliminate inconsistency and anomalous results.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel

HN10 The doctrine of collateral estoppel provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. For collateral estoppel to apply and bar a party from relitigating an issue, there must be (1) an identity of issues, (2) a previous proceeding that resulted in a final judgment on the merits, and (3) a party against whom collateral estoppel is asserted that is the same or in privity with a party in the previous proceeding. Because its

application is capable of producing extraordinarily harsh and unfair results, however, courts have held that they will not apply the doctrine mechanically in situations in which it would lead to inequitable results.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel
Criminal Law & Procedure > Sentencing > Alternatives > Probation

*HN11* Considering collateral estoppel principles, the Supreme Court of Rhode Island believes that further application of the doctrine of collateral estoppel to bar relitigation of a criminal charge, following a determination during a probation-revocation hearing that is adverse to the State, inequitably overlooks and misconceives the inherent and important differences between those proceedings and criminal trials. Moreover, the court believes that continued application of the Chase doctrine, in State v. Chase, 588 A.2d 120 (R.I. 1991), runs contrary to certain overwhelming policy considerations that are central to the criminal justice system. The court is guided in its analysis of this issue by a number of state and federal court decisions that have concluded that collateral estoppel does not apply to issues raised at a probation-revocation hearing that later form the basis of a criminal trial.

Criminal Law & Procedure > Sentencing > Alternatives > Probation
Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process

*HN12* A probation-revocation hearing is not part of a criminal prosecution and therefore does not give rise to the full panoply of rights that are due a defendant at trial. A probation-revocation hearing is not a prosecution that seeks to convict the defendant for the alleged violation, but, rather, a continuation of the original prosecution for which probation was imposed. Because the State need not prove a probation violation "beyond a reasonable doubt," but only by "reasonably satisfactory evidence," probation-violation hearings are frequently held without the benefit of preparation that precedes a criminal trial, and thus are properly conducted in a more informal manner than a trial in the interest of determining whether probation has proven an effective vehicle to accomplish rehabilitation.

Criminal Law & Procedure > Sentencing > Alternatives > Probation
Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process

*HN13* Due to the less formal nature of probation revocation proceedings, defendants consequently are afforded considerably less due process protection than that to which they are constitutionally entitled in a full-blown criminal trial. The minimum due process requirements of a violation hearing call only for notice of the hearing, notice of the claimed violation, the opportunity to be heard and present evidence in defendant's behalf, and the right to confront and cross-examine the witnesses against defendant. Indeed, the right to confront and cross-examine adverse witnesses during probation-revocation hearings is merely a conditional right, and need not be afforded to the defendant in those cases in which the hearing officer has found good cause for not allowing confrontation. Furthermore, the rules of evidence are applied less stringently in a probation-revocation hearing than during a trial proceeding. The use of hearsay in such proceedings is not precluded.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel
Criminal Law & Procedure > Postconviction Proceedings > Parole
Criminal Law & Procedure > Sentencing > Alternatives > Probation
Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process

*HN14* Mindful of the critical differences in both the purposes of and procedures employed during probation-revocation hearings and criminal trials, the Supreme Court of Rhode Island is of the opinion that further application of the Chase doctrine, in State v. Chase, 588 A.2d 120 (R.I. 1991), would strongly counteract the significant public interest in the preservation of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes. Practical public policy requires that new criminal matters, when charged in the criminal justice system, must be permitted to be there decided, unhampered by any parallel probation-revocation proceeding. Despite the undoubted minor

differences between probation and parole, the revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel
Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN16 The government is not statutorily or constitutionally obligated to put forth all its evidence at a probation-revocation hearing. However, application of collateral estoppel to probation-revocation hearings inevitably thwarts this principle of criminal jurisprudence by forcing the State to expedite discovery and present any and all of its evidence and witnesses well in advance of trial. This is especially problematic when, as in some complicated cases, the charges raised at a revocation hearing are only a small part of a larger, ongoing criminal investigation. As a result, it is evident that requiring the State to complete its entire investigation before seeking to revoke an individual's probation can effectively hinder its ability to carefully strategize the prosecution of criminal suspects and, consequently, provide for public safety.

Criminal Law & Procedure > Double Jeopardy > Collateral Estoppel
Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Tests
Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN17 It is settled law that double jeopardy does not operate to bar prosecution of a defendant for criminal misconduct after the State alleges that very same misconduct as a basis for a finding of a violation of the defendant's preexisting probation. A probation-revocation hearing is considered a continuation of the original prosecution for which probation was imposed--in which the sole purpose is to determine whether a criminal defendant has breached a condition of his existing probation, not to convict that individual of a new criminal offense. Consequently, it is black letter law that jeopardy does not attach to probation-revocation proceedings, because those proceedings are not designed to punish criminal defendants for violation of a criminal law.

Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Tests
Criminal Law & Procedure > Sentencing > Alternatives > Probation

HN18 A probation-revocation hearing is merely a continuation of the prosecution for which the probation originally was imposed; not a separate proceeding to which jeopardy would attach.

**COUNSEL:** For Plaintiff: Aaron L. Weisman, Esq.

For Defendant: Paula Lynch, Esq.

**JUDGES:** Williams, C.J., Goldberg, Flaherty, Suttell, and Robinson, JJ. WRITTEN BY Justice Francis X. Flaherty.

**OPINIONBY:** Flaherty

**OPINION:** **[*349]** **Flaherty, Justice.** In this case, we decide whether the doctrine of collateral estoppel bars prosecution of the defendant, Jacques Gautier, for the brutal 1998 slaying of Jeffrey Indellicati, after a probation-violation hearing in which a justice of the Superior Court made a finding that he "was not satisfied the State met its burden [in proving] that he did murder [the victim]." This marks the second time in the progression of this case that the parties have sought review before this Court. In light of our previous decision in State v. Gautier, 774 A.2d 882 (R.I. 2001)(Gautier I), we hold that collateral estoppel does not mandate dismissal of the criminal indictment pending against the defendant. In addition, considering our holdings that have redefined and clarified the role of a hearing justice sitting in a probation-revocation proceeding, we expressly **[**2]** overrule and abrogate our 1991 decision in State v. Chase, 588 A.2d 120 (R.I.

1991), insofar as it is inconsistent with the principles enunciated in this opinion.

**Facts and History**

Although the facts of this case have been set forth in Gautier I, we will recite yet again those facts necessary to decide this case. On July 21, 1998, defendant pleaded nolo contendere to charges of delivery of cocaine and conspiracy to deliver cocaine. On each count, he was sentenced to ten years at the Adult Correctional Institutions, twenty-one days to serve, with the remainder of the term suspended, with probation. The defendant's probationary term was short-lived, however. Less than three months later, on October 6, 1998, plaintiff was arrested by the Providence police on a charge that he had murdered his wife's seventeen-year-old boyfriend, Jeffrey Indellicati, after a late-night dispute inside his wife's home in Providence.

Pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure, n1 defendant was presented to the Superior Court as an alleged violator of his probation. A violation hearing was held on November 12 and 20, 1998, during which the court **[**3]** heard testimony from five witnesses. Three of those witnesses, defendant's wife Minerva Gautier (Minerva), Providence Police Officer Anthony Texiera, Jr., and Chief Medical Examiner Dr. Elizabeth Laposata, testified on behalf of the state.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Rule 32(f) of the Superior Court Rules of Criminal Procedure provides as follows:

> *HN1*"Revocation of Probation. The court shall not revoke probation or revoke a suspension of sentence or impose a sentence previously deferred except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Minerva testified that in the early morning hours of October 6, 1998, she was awakened in her home by noise emanating from the kitchen. After entering the **[*350]** kitchen **[**4]** to investigate, she discovered defendant, who apparently had entered the home through a nearby window. According to Minerva, she and defendant began to argue, and the volume of their argument also awakened Indellicati, who had been sleeping in the nearby bedroom. Indellicati entered the kitchen and a physical altercation began between the two men. As the fight escalated, Minerva testified, defendant grabbed a knife from a kitchen drawer and began stabbing Indellicati. The fight moved from the kitchen to the bathroom, where defendant allegedly stabbed a helpless Indellicati as he lay on the floor. Minerva testified that she unsuccessfully attempted to administer cardiopulmonary resuscitation to the victim, but that defendant ordered her at knifepoint to get the couple's son and drive them to his sister's apartment at 53 Lancashire Street.

Next, Officer Anthony Texiera, Jr. testified that on the morning after the slaying, he received information that a murder had taken place at 30 Barbara Street, and that a beige Honda with tinted windows, a cracked windshield, and Florida license plates, had been spotted in the area. By

chance, Texiera recognized the vehicle description from a previous **[**5]** encounter with Minerva and defendant. As a result, the officer proceeded to Lancashire Street, where he saw the beige Honda pull into a driveway. Texiera immediately positioned his cruiser behind the vehicle and ordered its operator out of the car. The operator did not heed the officer's demands; instead he placed the vehicle in reverse and proceeded to drive off through side yards and over curbing in an attempt to flee. The officer gave chase, however, and eventually apprehended the driver about a block away. Texiera then identified the driver of the vehicle as Jacques Gautier. He also observed blood in the interior of the car and on defendant, as well as a fresh cut on Gautier's hand.

The state's third witness was Chief Medical Examiner Dr. Elizabeth Laposata, who testified that her autopsy of the victim revealed sixty-eight separate stab wounds. She testified that her examination of the victim's remains indicated that he had received wounds from two different knives, one of which was serrated. Doctor Laposata added that two knives seized from the scene were consistent with the victim's wounds.

The defendant presented two witnesses during the hearing. The defendant's sister, **[**6]** Brandy Jimenez, testified that she was awakened on the night in question by defendant and Minerva, who told her that Indellicati had been stabbed and that she should call an ambulance. Jimenez testified that she overhead her brother tell Minerva, "I'm going to get blamed for this," at which point Minerva responded, "I'll tell them I did it." The defendant's second witness was fourteen-year-old Herminio Asencio, whose testimony was offered to substantiate defendant's assertion that he was living at 30 Barbara Street and therefore had a right to be in the apartment on the night in question.

At the close of testimony, the hearing justice determined that, based on the state's Rule 32(f) notice, which alleged only the offense of murder as a ground for the revocation of defendant's probation, Gautier was not a violator. The hearing justice stated:

> "I made a factual finding [that] I did not believe the State's witness that [defendant] in fact caused the death or that he murdered--and that was the notice that was given to the defendant--that he murdered [Indellicati]. * * * I'm called upon to make certain findings. The evidence presented to me, as I indicated to you in chambers, **[**7]** I think the 32(f) notice **[*351]** was deficient. Had the 32(f), for example, alerted the defendant to the fact that he was being accused of violating the nine-and-a-half years I believe it was, nine years, ten months of a previously suspended sentence because he beat up his wife or violated a restraining order, that would have been simple. But the 32(f) notice presented to me said that he's a violator because he murdered [Indellicati]. From the evidence presented to me, I was not satisfied the State met its burden [in proving] that he did murder [Indellicati]."

The hearing justice specifically rejected Minerva's testimony and found it "to be somewhat inherently improbable[,]" especially in light of her demeanor in the courtroom. The hearing justice noted that Minerva "displayed absolutely zero emotion from [the] witness stand * * *[,]" and stated "it's my sense she is hiding something. She wasn't completely truthful." In addition, however, the hearing justice stated that a jury would decide the defendant's ultimate guilt or innocence at a subsequent trial on the merits: "I'll let that decision be made by the factfinder of the jury. * * * I made a factual finding [that] I did **[**8]** not believe * * * that he murdered [Indellicati]. How that impacts on the ability to go forward, that's a legal matter that counsel will have to wrestle with."

The state filed a petition for a writ of certiorari, seeking appellate review of the hearing justice's decision. We granted the petition on June 29, 2001. Reiterating our established rule that *HN2*"the appropriate role of the hearing justice [in a probation-revocation hearing is] to determine 'only

whether in [the hearing justice's] discretion [the defendant's] conduct on the day in question had been lacking in the required good behavior expected and required by his probationary status[,]'" Gautier I, 774 A.2d at 886-87 (quoting State v. Znosko, 755 A.2d 832, 834-35 (R.I. 2000)), and not "to determine the validity of the specific charge that formed the basis of the violation[,]" id., we held that the hearing justice had "misconceived his role" at the probation-revocation hearing by rendering a factual conclusion relative to the defendant's culpability for the underlying charge. Id. at 886.

Although we noted that the Rule 32(f) notice provided by the state was lacking, **[**9]** in that the state could have enumerated several other grounds besides the murder on which to support the revocation of defendant's probationary status, we reasoned that the trial justice had sufficient evidence before him from which to conclude that Gautier had violated his probation. This evidence established defendant's presence at the scene of the brutal slaying, his failure to notify the police after fleeing the scene, and his flight from Officer Texiera upon being ordered out of his vehicle on the morning of his arrest. These facts alone, we opined, provided the trial justice with more than enough information from which to conclude that plaintiff's conduct on the day in question "had been lacking in the required good behavior expected and required by his probationary status." Id. at 887 (quoting Znosko, 755 A.2d at 834-35). Thus, we held that the trial justice's review of the evidence presented both exceeded the scope of the court's duty in a probation-revocation hearing and incorrectly assessed defendant's conduct in light of the clear facts presented by the state.

In addition, we specifically deemed an error of law the hearing justice's statement **[**10]** that, in spite of his factual determination that defendant did not commit the murder, a jury would be permitted to formally adjudge defendant's guilt or innocence on that charge after a trial on the merits. Because of our holding in Chase, **[*352]** we observed, the state would be precluded from relitigating Gautier's guilt or innocence in light of those very findings made during the probation-revocation proceeding. Accordingly, we concluded that the hearing justice had critically misconceived the consequences of the adjudication of non-violation. Gautier I, 774 A.2d at 887-88. Therefore, we granted the state's petition, quashed the Superior Court judgment, and remanded the case with directions to adjudge defendant a violator. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Following our discussion on the foregoing point of law, we attempted, in a footnote, to distinguish our decision in State v. Chase, 588 A.2d 120 (R.I. 1991), from the pending matter. After setting forth the factual background from which the questions of law at issue in Chase had emerged, see infra, we opined that although the hearing justice in that case had determined that the criminal defendant presented as a violator was not guilty of doing anything, the hearing justice in Gautier's violation proceeding had been unable to make such a determination--instead noting that although a murder had occurred, it should be left to the jury to decide who had committed it. State v. Gautier, 774 A.2d 882, 888 n.4 (R.I. 2001).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[**11]**

In accordance with our decision, the state filed a motion to have the previous adjudication of non-violation reconsidered. The matter came before the same hearing justice who had presided over defendant's first probation-revocation hearing. Adhering to our direction, the hearing justice found the defendant to be a violator, stating:

> "By virtue of the Supreme Court's ruling on the issue[,] * * * the State will have the opportunity if they can satisfy a Grand Jury, that there's probable cause to believe that this defendant was involved in the murder of Mr. Indellicati. An indictment will be

returned. He will have the opportunity to maintain his presumption of innocence and require the State to prove his guilt beyond a reasonable doubt with competent and credible witnesses. If the State reaches that burden, * * * it very well could be that the fact finder, the jury, could find from the number of wounds inflicted, if inflicted by the same person, could qualify to cause the [trial justice] to impose the sentence of life imprisonment without parole. So in the context of the case presented to me and to the Supreme Court, the State has won. * * * The Supreme Court found the defendant **[**12]** to be a violator. Suffice it to say, he's a violator. I'll continue him on the same sentence."

Thereafter, a grand jury returned an indictment against Gautier, charging him with the murder of Jeffrey Indellicati, burglary, kidnapping, felony assault, eluding police, and violation of a no-contact order. The defendant then moved to dismiss the murder count, arguing that the state was collaterally estopped from prosecuting him for the murder pursuant to this Court's holdings in Chase and State v. Wiggs, 635 A.2d 272 (R.I. 1993) and in light of the specific findings of fact made by the hearing justice during defendant's first probation-violation hearing in November 1998. Following a hearing, a justice of the Superior Court denied defendant's motion, reasoning that this Court's holding in Gautier I quashed not only the final judgment denying the state's original motion to hold defendant as a violator, but also any findings of fact on which the hearing justice had based that erroneous conclusion. Thus, the motion justice concluded, the question of whether the defendant had killed Indellicati had not been determined by a final judgment which would be necessary **[**13]** to preclude the state's maintenance of criminal charges against him under Chase.

On appeal, defendant reasserts that the state is collaterally estopped from maintaining **[*353]** its murder charge based upon the hearing justice's determination, during his original probation-revocation hearing, that the state had failed to meet its burden in proving that defendant murdered Indellicati. The state, on the other hand, argues that this Court's decision in Gautier I, which quashed the hearing justice's adjudication of non-violation, rendered any factual determinations made during that hearing a legal nullity. Thus, the state maintains, Gautier I eliminated and invalidated, as a matter of law, the very findings of fact that defendant alleged would support the dismissal of the criminal charges under Chase and Wiggs. Consequently, the state avers, as it did before the motion justice, that collateral estoppel cannot apply to the case at bar because those original findings no longer are contained in a "valid and final judgment."

**Analysis and Discussion**

While this appeal was pending, but before the parties filed briefs to this Court, we issued our decision in State v. Santiago, 847 A.2d 252 (R.I. 2004) **[**14]** (Santiago II), which significantly impacts our analysis of the issues and arguments presented by Gautier's instant appeal. In Santiago, the defendant probationer was stopped by the Pawtucket police for operating an unregistered vehicle. The police searched the vehicle and discovered two loaded .22-caliber revolvers under the driver's side seat. As a result, the state sought to have the defendant adjudicated a probation violator. After a probation-revocation hearing, a Superior Court justice concluded that the state had offered insufficient evidence to suggest that the defendant had any knowledge that the guns were present in the vehicle. The hearing justice declared that he was not reasonably satisfied that the defendant had violated the terms of his probation. On certiorari, however, we quashed the judgment of the trial court, holding that the hearing justice had erred when he made a factual determination of the defendant's innocence on the charge underlying the alleged probation violation. Specifically, we held that *HN3*"the [only] relevant question before the hearing justice was * * * whether [the defendant] 'had been lacking in the required good behavior expected and required **[**15]** by his probationary status[,]'" and not whether the state had satisfactorily proven the defendant's criminal guilt for the charges forming the basis of alleged

violation. State v. Santiago, 799 A.2d 285, 288 (R.I. 2002) (Santiago I) (quoting Gautier I, 774 A.2d at 887). Accordingly, we remanded the case for a new probation-revocation hearing, at which the defendant admitted to the violation.

Two months later, the state recharged the defendant with the firearm offenses. The defendant promptly moved to dismiss, but the Superior Court denied his motion. The defendant appealed, maintaining that the findings of fact made by the hearing justice during his first probation-violation hearing collaterally estopped the state from prosecuting him on those charges. We affirmed the motion justice. Relying heavily on our decision in Santiago I, we rejected the defendant's argument:

> "collateral estoppel is not available to this defendant because there has not been a valid and final judgment on the ultimate issues in this case. In Santiago I, we quashed the decision of the trial justice and declared his findings to be erroneous. Thus, that decision **[**16]** is a nullity and has no preclusive effect." Santiago II, 847 A.2d at 254.

The case before us bears a striking resemblance to Santiago II. Clearly, the hearing justice in this case made a factual finding during defendant's first probation-revocation hearing which, defendant argues, effectively absolved him of criminal responsibility for the murder alleged by **[*354]** the state as the basis for its Rule 32(f) notice. Thereafter, we quashed that decision, thus nullifying, as a matter of law, any finding of fact made by the trial justice during that probation-revocation hearing. On remand, the hearing justice found defendant to be a violator on the basis of our decision in Gautier I. He made no further findings of fact with respect to defendant's guilt or innocence on the underlying charge. Therefore, there are no longer any existing factual findings that could bar the state from relitigating Gautier's culpability for the murder of Jeffrey Indellicati.

Although the foregoing is dispositive of the specific issue before the Court, we take this opportunity to revisit the "Chase Doctrine." In Gautier I, this Court observed that:

> "it has been suggested that **[**17]** we reconsider our decision in Chase in light of recent cases that clarify the role of a hearing justice at a probation violation hearing. * * * That issue, however, is not currently before us. We decline to reconsider our ruling in Chase until the parties have been given an opportunity to fully brief that issue." Gautier I, 774 A.2d at 888 n.4.

Today, we are of the opinion that Chase's vitality should be reexamined in the face of our recent holdings. The issues have been briefed and argued and are now appropriately before us. As further discussed below, *HN4*we are mindful that our opinion today overrules that portion of our 1991 decision in Chase, which established that specific findings on a material matter of fact fully litigated at a probation-revocation hearing will collaterally estop the state from attempting to prove the same fact at a subsequent criminal trial. For the reasons set forth below, we overrule Chase, insofar as it is inconsistent with our holding herein.

**Collateral Estoppel**

**State v. Chase**

In view of our decision to depart from Chase, a detailed analysis of that case is warranted. On March 14, 1989, while **[**18]** on probation for a previous conviction, the defendant, Ronald Chase, was arrested after allegedly selling cocaine to an undercover police officer. Due to his earlier conviction and sentence, the state presented the defendant as a violator before the Superior Court pursuant to a Rule 32(f) notice. After considering testimony given during a subsequent probation-revocation hearing, the hearing justice denied the state's motion. Reviewing the evidence, the hearing justice accepted the defendant's contention that he knew that at least one of the individuals involved in the drug transaction was a police officer acting in an undercover capacity at the time of the alleged narcotics sale. Thus, the hearing justice found it incredible that the defendant had breached the terms of his probation in the manner alleged by the state.

After this favorable decision, the defendant moved to dismiss the pending criminal charges on the grounds of collateral estoppel, double jeopardy, and due process, arguing that the hearing justice's determination that he had not violated his probation precluded the state from relitigating the same issues at trial. The Superior Court denied the motion, and we reversed. **[**19]**

First, we rejected the defendant's double jeopardy argument, opining that *HN5*"the sole purpose of the [probation-revocation] hearing is to determine whether a defendant has breached a condition of the existing probation, not to convict a defendant for a new criminal offense." Chase, 588 A.2d at 122. Thus, we held, *HN6*"a defendant is not twice placed in jeopardy for the **[*355]** same offense when the facts litigated at the [probation-revocation] hearing are later used to support a criminal prosecution." Id.

With regard to Chase's collateral estoppel claim, however, we held that the hearing justice's conclusion that the defendant had not committed the crime alleged by the state barred any further litigation of that material issue of fact. Noting a "split of authority" on the issue, we determined that a finding of non-violation, since it provided a "full[] litigation" of the issue of the defendant's guilt or innocence, constituted a "valid and final judgment" for collateral estoppel purposes. Chase, 588 A.2d at 122, 123. On this point, we recognized that the probation-revocation hearing provided each party with "a full and fair opportunity to present evidence **[**20]** and call witnesses." Id. at 123. Moreover, we noted "that any additional witnesses the state may have called at trial would have contributed only repetitive or cumulative evidence without 'bringing to light some new and independent truth of a different character.'" Id. (quoting State v. Tavares, 461 A.2d 390, 392 (R.I. 1993)).

We rejected the state's argument that the issues decided in the probation-revocation proceeding were not identical to those adjudicated during a criminal trial. Acknowledging the differences between the two proceedings, we nevertheless concluded that the factual allegations in each were the same, and thus, the ultimate question of fact at issue during both proceedings was identical. Accordingly, we held

> "it is our considered opinion that only a specific finding on a material matter of fact fully litigated at the probation-revocation hearing will collaterally estop the state from attempting to prove the same fact at trial. A general finding will not suffice, nor will a specific finding that was not fully litigated unless the state had notice that the issue was to be litigated fully at the hearing and had a fair opportunity **[**21]** to do so." Chase, 588 A.2d at 123.

**Chase Reaffirmed: State v. Wiggs**

Just three years after our holding in Chase, we decided Wiggs. There, the defendant was charged with breaking and entering, simple assault, and assault with a dangerous weapon, all while on probation for an earlier conviction. On the basis of those charges, the state prepared a Rule 32(f) notice and presented the defendant as a violator before the Superior Court.

After hearing testimony, the hearing justice determined that the defendant was a violator on the grounds that his behavior on the night in question "was not good." Notwithstanding that conclusion, however, the hearing justice inexplicably proffered an additional factual determination regarding Wiggs's involvement in the alleged breaking and entering, stating "there is not sufficient evidence, it's true, to prove even beyond a reasonable satisfaction standard that [the defendant] was present at the time the apartment was broken into and entered by the others[.]" Wiggs, 635 A.2d at 274. Citing Chase, the defendant moved to dismiss the criminal charge of breaking and entering, maintaining that **[**22]** the hearing justice's factual findings foreclosed the issue of his criminal responsibility for that alleged offense. The motion justice denied the defendant's motion to dismiss, but we reversed.

Relying on Chase, we determined that because the state had a "full and fair opportunity" to present evidence and call witnesses during Wiggs's probation-revocation hearing, the hearing justice's finding that the state had failed to establish that the defendant was present at the time of the breaking and entering constituted a valid final judgment barring any further **[*356]** relitigation of the issue. Wiggs, 635 A.2d at 276. Because the state had been afforded a "full and fair hearing," we reasoned, "the defendant should not be penalized for the state's tactical decision not to present a full case on all counts at the probation-revocation hearing." Id.

**Chase's Erosion: State v. Godette and State v. Znosko**

In the years since Wiggs, we have issued several decisions that conflict with the principles first espoused in Chase and that render its application uncertain and problematic. The first of these decisions was State v. Godette, 751 A.2d 742 (R.I. 2000). **[**23]** There, the defendant was arrested and charged with driving a vehicle without the consent of the owner in violation of G.L. 1956 § 31-9-1. Godette, 751 A.2d at 744. Because he was on probation at the time of the arrest, the state filed and served the defendant with a Rule 32(f) notice based on that specific allegation. Godette, 751 A.2d at 744 At Godette's violation hearing, however, the state's prosecutor asserted that the state had amended the Rule 32(f) complaint to charge the defendant with possession of a stolen vehicle, instead of the offense of driving without the consent of the owner. The hearing justice disagreed, finding that the state had not formally amended its notice of violation, and noting "Rule 32(f) requires unequivocally that the State furnish the defendant and the court with a written statement specifying the grounds upon which the violation is premised." Godette, 751 A.2d at 744. As to the allegation of driving without the consent of the owner, the hearing justice found that the state had failed to present evidence sufficient to establish that the defendant had ever driven the vehicle in **[**24]** question. Therefore, the hearing justice refused to find the defendant in violation.

The state later charged the defendant with possession of a stolen vehicle in violation of § 31-9-2, and Godette promptly moved to dismiss the charge in light of the findings made at the probation-revocation hearing. Godette, 751 A.2d at 745. Reasoning that possession of a stolen vehicle under § 31-9-2 was different from driving without consent under § 31-9-1, however, the motion justice found no "identity of issues" necessary to collaterally estop the state from prosecuting the defendant under the former charge. n3 The defendant appealed, and we affirmed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The motion justice also determined that the criminal charges did not impinge upon the

defendant's right against double jeopardy.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Citing Chase as our governing rule of law on the issue, we opined that the defendant had failed to demonstrate the "identity of issues" necessary to invoke the doctrine of collateral estoppel against the state's prosecution. **[**25]** Because the hearing justice in the probation-revocation proceeding had made no findings with respect to the defendant's possession of a stolen vehicle, we held, there existed no preclusive findings of fact of which the Chase doctrine would bar relitigation. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 We also rejected the defendant's double-jeopardy argument on the grounds that possession of a stolen vehicle under G.L. 1956 § 31-9-2 was not a lesser included offense of driving without consent under § 31-9-1.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In addition, we specifically faulted the hearing justice's conclusion during the probation-revocation hearing that the state had failed to properly amend its Rule 32(f) notice to the defendant. On this point, we deemed that the Rule 32(f) notice alleging a violation of § 31-9-1, coupled with the attached police report provided to the defendant, was sufficiently similar in nature to the amended charge of possession of a stolen vehicle under § 31-9-2 to satisfy the rule's notice requirements. Accordingly, **[*357]** we held **[**26]** that the state had complied with its obligation to provide prior notice "when * * * the initial written statement provided to the defendant involved a substantially similar charge relating to the same date, the same occurrence, the same physical evidence, and the same witnesses as in the amended charge." Godette, 751 A.2d at 745.

Of significant importance to our holding here, we also concluded in Godette that the hearing justice had critically misconceived her role during the probation-violation hearing by rendering a specific finding regarding the defendant's ultimate culpability for the misconduct set forth in the state's Rule 32(f) notice. On this point, we concluded that it was not the role of the hearing justice to determine the validity of the specific charges against the defendant. Rather, we held that the hearing justice's proper function was to assess "only whether in her discretion [the defendant's] conduct on the day in question had been lacking in the required good behavior expected and required by his probationary status." Godette, 751 A.2d at 745. Thus, we established that a hearing justice sitting in a probation-revocation hearing **[**27]** should not decide the merits of the underlying charge upon which the purported violation is based.

[redacted] does that mean →

Just a few months later, we reaffirmed this imperative principle in State v. Znosko, 755 A.2d 832 (R.I. 2002). There, the defendant, while on probation for a previous conviction, was arrested on suspicion of murder arising from an altercation at a family cookout. The state promptly filed a Rule 32(f) notice indicating that the defendant had violated the terms and conditions of his probation, and a hearing followed. Although the testimony during the violation hearing did not reveal why the defendant and the victim began fighting, the evidence did, in fact, establish that the defendant had stabbed the victim during their altercation and had fled the scene of the incident. The state also presented evidence indicating that after he was arrested, the defendant admitted, in a statement to police, that he had smoked marijuana during the cookout and possessed the alleged murder weapon.

In light of that evidence, the hearing justice concluded that the defendant had stabbed the victim, and, as a result, declared him to be a violator. The defendant appealed. Although we

affirmed [**28] the court's decision, we reiterated that "the appropriate role of the hearing justice was to determine 'only whether in [the hearing justice's] discretion [the defendant's] conduct on the day in question had been lacking in the required good behavior expected and required by his probationary status.'" Znosko, 755 A.2d at 834 (quoting Godette, 751 A.2d at 745). Thus, even though the hearing justice had exceeded his role during the probation-revocation hearing by rendering a factual determination that the defendant had indeed stabbed the victim, we held that the hearing justice had ruled appropriately on the ultimate issue before the court, viz., whether the defendant had violated the terms of his probation. Irrespective of his fault for the alleged murder, we reasoned, Znosko's admitting to smoking marijuana, acknowledging his participation in the altercation with the victim, and conceding his possession of a pocket knife, were sufficient to support a determination that the defendant had violated the terms and conditions of his probation.

**Departure from Chase**

Since Znosko and Godette, we have adhered to and reaffirmed the [**29] principle that HN7"the court's role [in a probation-revocation proceeding] is not to determine the defendant's criminal guilt or innocence with respect to the underlying conduct [*358] that triggered the violation hearing[,]" State v. Piette, 833 A.2d 1233, 1236 (R.I. 2003), but rather, to determine "whether a defendant has breached a condition of his probation by failing to keep the peace or remain on good behavior." State v. Crudup, 842 A.2d 1069, 1072 (R.I. 2004). See State v. Campbell, 833 A.2d 1228, 1230 (R.I. 2003); State v. Dale, 812 A.2d 795, 798 (R.I. 2002); Hampton v. State, 786 A.2d 375, 379 (R.I. 2001). In light of these decisions, we are of the opinion that further adherence to our decision in Chase no longer is warranted. HN8Because it is not appropriate for a hearing justice in probation-revocation proceedings to make factual determinations of guilt or innocence on the charges which form the basis of the alleged violation, we believe that our holding in Chase governing the preclusive effect of such findings and conclusions is inconsistent and confusing to both practitioners and criminal [**30] defendants alike. We are mindful that HN9"although stare decisis serves a profoundly important purpose in our legal system, * * * overruling precedent is justified if the motivating purpose is to eliminate inconsistency and anomalous results." State v. Werner, 615 A.2d 1010, 1014 (R.I. 1992).

HN10The doctrine of collateral estoppel provides that "'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" State v. Werner, 865 A.2d. 1049, 1055 (R.I. 2005) (quoting Santiago II, 847 A.2d at 254). "For collateral estoppel to apply and bar a party from relitigating an issue, there must be '(1) an identity of issues, (2) the previous proceeding must have resulted in a final judgment on the merits, and (3) the party against whom collateral estoppel is asserted must be the same or in privity with a party in the previous proceeding.'" Id. Because its application "'is capable of producing extraordinarily harsh and unfair results[,]'" however, we have held that we will "not apply the doctrine 'mechanically' in situations [**31] in which it would lead to inequitable results." Foster-Glocester Regional School Committee v. Board of Review, 854 A.2d 1008, 1017 (R.I. 2004) (quoting Casco Indemnity Co. v. O'Connor, 755 A.2d 779, 782 (R.I. 2000)). HN11Considering this principle, we believe that further application of the doctrine of collateral estoppel to bar relitigation of a criminal charge, following a determination during a probation-revocation hearing that is adverse to the state, inequitably overlooks and misconceives the inherent and important differences between those proceedings and criminal trials. Moreover, we believe that continued application of the Chase doctrine runs contrary to certain overwhelming policy considerations that are central to the criminal justice system. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 We are guided in our analysis of this issue by a number of state and federal court decisions that have concluded that collateral estoppel does not apply to issues raised at a probation-revocation

hearing that later form the basis of a criminal trial. These cases include United States v. Miller, 797 F.2d 336 (6th Cir. 1986); State v. Williams, 131 Ariz. 211, 639 P.2d 1036 (Ariz. 1982); Lucido v. Superior Court, 51 Cal. 3d 335, 795 P.2d 1223, 272 Cal. Rptr. 767 (Cal. 1990); Byrd v. People, 58 P.3d 50 (Colo. 2002); State v. McDowell, 242 Conn. 648, 699 A.2d 987 (Conn. 1997); State v. O'Donnell, 2004 WL 772071 (Del.Super.); Green v. Florida, 463 So. 2d 1139 (Fla. 1985); Teague v. State, 169 Ga. App. 285, 312 S.E.2d 818 (Ga.Ct.App. 1983); People v. Fagan, 104 A.D.2d 252, 483 N.Y.S.2d 489 (N.Y.App.Div. 1984); Commonwealth v. Cosgrove, 427 Pa. Super. 553, 629 A.2d 1007 (Pa. Super. Ct. 1993); State v. Brunet, 174 Vt. 135, 806 A.2d 1007 (Vt. 2002).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[**32]**

As a threshold matter, we note, as we did in Chase, that *HN12* a "probation revocation hearing is not part of a criminal prosecution and therefore does not give **[*359]** rise to the full panoply of rights that are due a defendant at trial." Chase, 588 A.2d at 122. A probation-revocation hearing is not a prosecution that seeks to convict the defendant for the alleged violation, but, rather, a "continuation of the original prosecution for which probation was imposed." Id. Because the state need not prove a probation violation beyond a reasonable doubt, but only by "reasonably satisfactory evidence," State v. Casiano, 667 A.2d 1233, 1237 (R.I. 1995), probation-violation hearings are "frequently held without the benefit of preparation that precedes a criminal trial," Commonwealth v. Cosgrove, 427 Pa. Super. 553, 629 A.2d 1007, 1011 (Pa. Super. Ct. 1993), and thus "are properly conducted in a more informal manner than a trial * * * in the interest of determining whether probation has proven an effective vehicle to accomplish rehabilitation." Id.

*HN13* Due to the less formal nature of such proceedings, defendants consequently are afforded considerably **[**33]** less due process protection than that to which they are constitutionally entitled in a full-blown criminal trial. As we have held, "the minimum due process requirements of a violation hearing call [only] for notice of the hearing, notice of the claimed violation, the opportunity to be heard and present evidence in defendant's behalf, and the right to confront and cross-examine the witnesses against defendant." State v. Vashey, 823 A.2d 1151, 1155 (R.I. 2003) (quoting Casiano, 667 A.2d at 1239). Indeed, the right to confront and cross-examine adverse witnesses during probation-revocation hearings is merely a "conditional right," and "need not be afforded to the defendant in those cases in which the hearing officer has found good cause for not allowing confrontation." Casiano, 667 A.2d at 1239. Furthermore, the rules of evidence are applied less stringently in a probation-revocation hearing than during a trial proceeding. Chase, 588 A.2d at 123. The use of hearsay in such proceedings is not precluded. Casiano, 667 A.2d at 1239.

*HN14* Mindful of the critical differences in both the purposes of and procedures **[**34]** employed during probation-revocation hearings and criminal trials, we are of the opinion that further application of the Chase doctrine would strongly counteract the significant public interest in the preservation of the criminal trial process "as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes." Lucido v. Superior Court, 51 Cal. 3d 335, 795 P.2d 1223, 1230-31, 272 Cal. Rptr. 767 (Cal. 1990). We join the majority of courts that have addressed this issue, and we concur in the opinion that "practical public policy requires that new criminal matters, when charged in the criminal justice system, must be permitted to be there decided, unhampered by any parallel [probation-revocation proceeding]." State v. Dupard, 93 Wn.2d 268, 609 P.2d 961, 965 (Wash. 1980). n6 It is our considered opinion that this policy promotes the best interests of both defendants, who are entitled to a full trial for alleged criminal misconduct, and prosecutors, who are charged with the responsibility of trying those accused of such crimes.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 In State v. Dupard, 93 Wn.2d 268, 609 P.2d 961 (Wash. 1980), the Washington Supreme Court

addressed the application of collateral estoppel to bar issues previously addressed in parole revocation proceedings. We note, however, as did the United States Supreme Court in Gagnon v. Scarpelli, 411 U.S. 778, 782 n.3, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), that "despite the undoubted minor differences between probation and parole, the commentators have agreed that the revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[**35]**

To conclude otherwise would, as the California Supreme Court cogently observed, **[*360]** "undesirably alter the criminal trial process by permitting informal revocation determinations to displace the intended factfinding function of the trial." Lucido, 795 P.2d at 1229. See also Byrd v. People, 58 P.3d 50, 58 (Colo. 2002) ("To apply issue preclusion to bar a trial would undermine the basic and fundamental functions of a criminal trial--to determine the guilt or innocence of the accused using a panoply of procedures and protections designed and developed over many years to ensure a fair search for the truth."); Teague v. State, 169 Ga. App. 285, 312 S.E.2d 818, 820 (Ga.Ct.App. 1983) ("The trial court is authorized the same discretion in refusing to revoke probation. The exercise of such discretion in declining to revoke probation should not be viewed as, and is in no way an adjudication of, the allegations sufficient to constitute an acquittal in a criminal prosecution or any form of final judgment which would act as a bar to a subsequent prosecution."). In that it is neither the purpose nor the intended function of probation-revocation hearings **[**36]** to "serve as a final arbiter of an individual's guilt or innocence of criminal charges[,]" Cosgrove, 427 Pa. Super. 553, 621 A.2d at 1011, we share in the opinion that "to cede this responsibility to a setting that does not adhere to the procedural safeguards necessary for a fair adjudication of guilt, such as a probation revocation hearing, would result in a perversion of the criminal justice system." Id.

The practical impact of the Chase doctrine further justifies our departure from it today. As the Court of Appeals for the Sixth Circuit recognized, *HN16*"the government is not statutorily or constitutionally obligated to put forth all its evidence at a probation revocation hearing * * *." United States v. Miller, 797 F.2d 336, 342 (6th Cir. 1986). However, application of collateral estoppel to probation-revocation hearings inevitably thwarts this principle of criminal jurisprudence by forcing the state to expedite discovery and present any and all of its evidence and witnesses well in advance of trial. This is especially problematic when, as in some complicated cases, the charges raised at a revocation hearing are only a small part of a larger, ongoing criminal **[**37]** investigation. Id. As a result, it is evident to us that requiring the state to complete its entire investigation before seeking to revoke an individual's probation can effectively hinder its ability to carefully strategize the prosecution of criminal suspects and, consequently, provide for public safety.

In Chase, we concluded that the application of collateral estoppel in these circumstances would "encourage the state to initiate future probation-revocation proceedings with more concern for judicial economy." Chase, 588 A.2d at 123. Alternatively, we noted, the state could "elect to bring a defendant to trial first and to institute the probation-revocation hearing after." Id. Blessed with the improved vision of hindsight, we conclude that those purported interests of judicial economy which so impacted our analysis fourteen years ago are outweighed by the significant policy interests set forth and explained herein. Accordingly, we abrogate Chase to the extent that it conflicts with this opinion. Thus, even assuming, arguendo, that the hearing justice made additional findings of fact relieving the defendant of criminal responsibility for the murder **[**38]** of Jeffrey Indellicati after our decision in Gautier I, it would in no way preclude the state from indicting and prosecuting defendant for the alleged murder.

**Double Jeopardy**

The defendant next contends that the state should be prevented from prosecuting him for the

murder of Jeffrey **[*361]** Indellicati because relitigation of his criminal liability on that charge would violate the prohibitions against double jeopardy as guaranteed by the Fifth Amendment to the United States Constitution, and its state counterpart; article 1, section 7, of the Rhode Island Constitution. We disagree. Notwithstanding Gautier I's nullification of the findings of fact made by the hearing justice during the defendant's original violation hearing, *HN17* it is settled law that double jeopardy does not operate to bar prosecution of a defendant for criminal misconduct after the state alleges that very same misconduct as a basis for a finding of a violation of the defendant's preexisting probation. As this Court previously established, a probation-revocation hearing is considered a continuation of the original prosecution for which probation was imposed--in which the sole purpose is to determine whether a **[**39]** criminal defendant has breached a condition of his existing probation, not to convict that individual of a new criminal offense. State v. Bourdeau, 448 A.2d 1247, 1248 (R.I. 1982). Consequently, it is black letter law that jeopardy does not attach to probation-revocation proceedings, because "'these proceedings are not designed to punish [criminal defendants] for violation of a criminal law.'" Hardy v. United States, 578 A.2d 178, 181 (D.C. 1990) (quoting Eighteenth Annual Review of Criminal Procedure, 77 Geo. L.J. 489, 580 (1989)). See Chase, 588 A.2d at 122 ("a defendant is not twice placed in jeopardy for the same offense when the facts litigated at [a probation-revocation] hearing are later used to support a criminal prosecution"). Accordingly, we reject Gautier's argument that the state's prosecution in any way impinges upon his constitutional right against double jeopardy. n7

Contempt p. 

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 We also reject the defendant's argument that our decision in State v. Beaulieu, 112 R.I. 724, 315 A.2d 434 (1974), has any application to the issues raised here. In Beaulieu, the only issue before this Court was whether the state could seek appellate review of a non-violation determination by filing a bill of exceptions under G.L. 1956 § 9-24-32. Answering that inquiry in the negative, we held that the language of the statute, which provided that a bill of exceptions could be taken only from judgments, decisions, or orders rendered prior to the attachment of jeopardy, clearly indicated that a bill of exceptions was not the proper vehicle through which to seek appellate review of the determinations of a hearing justice sitting in a post-conviction probation-revocation proceeding. Beaulieu, 112 R.I. at 728, 315 A.2d at 436. Because a defendant must already be convicted to be on probation, we reasoned, jeopardy surely has attached by the time that defendant is presented as violator. Thus, Beaulieu reaffirms the principle that *HN18* a probation-revocation hearing is merely a continuation of the prosecution for which the probation originally was imposed; not a separate proceeding to which jeopardy would attach. Accordingly, the defendant's reliance on Beaulieu is misplaced.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[**40]**

**Conclusion**

For the reasons stated herein, we affirm the judgment of the Superior Court denying the defendant's motion to dismiss. Insofar as it is inconsistent with this opinion, State v. Chase is expressly overruled.