UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JACQUES GAUTIER | : | |
| | : | |
| v. | : | C.A. No. 06-99S |
| | : | |
| STATE OF RHODE ISLAND, et al. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Before this Court is Jacques Gautier's Petition for Habeas Corpus (the "Petition") brought under 28 U.S.C. § 2254. (Document No. 1). The Petition attacks the refusal of the Superior Court to dismiss his 2003 indictment for murder subsequently affirmed by decision of the Rhode Island Supreme Court on April 12, 2005. State v. Gautier, 871 A.2d 347 (R.I. 2005) ("Gautier II"). Gautier filed his Petition *pro se* on March 3, 2006. Respondent, State of Rhode Island (the "State"), filed a timely response to the Petition in the form of a Motion to Dismiss (Document No. 12) on April 17, 2006.

The State's Motion to Dismiss has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). The Court has determined that no hearing is necessary. After reviewing the Petition and the Motion to Dismiss, in addition to performing independent research, this Court recommends that the State's Motion to Dismiss (Document No. 12) be GRANTED and Gautier's Petition for Habeas Corpus (Document No. 1) be DISMISSED WITH PREJUDICE as lacking legal merit.

**Facts and Travel**

Gautier was convicted on September 26, 2005 by a Rhode Island Superior Court jury of second-degree murder and breaking and entering a dwelling. He was sentenced to life imprisonment on the murder conviction and is currently serving that sentence at the ACI.

The general facts underlying Gautier's conviction are detailed in the opinions of the Rhode Island Supreme Court and are summarized as follows:[1]

On July 21, 1998, Gautier pled *nolo* in Superior Court to charges of delivery of cocaine and conspiracy to do so. He was sentenced to ten years on each count, twenty-one days to serve, with the remainder suspended with probation. Shortly into his period of probation, Gautier was arrested by the Providence Police on October 6, 1998 on a charge that he had brutally stabbed to death his wife's seventeen-year old boyfriend, Jeffrey Indellicati. The murder allegedly took place after a late-night dispute inside his wife's home in Providence.

As a result of his arrest, a probation revocation proceeding, brought pursuant to R.I. Super. Ct. R. Crim. P. 32(f), was promptly commenced against Gautier on October 7, 1998. A revocation hearing was held on November 12 and 20, 1998, and five witnesses testified (three presented by the State and two presented by Gautier). At the conclusion of the revocation hearing, the Superior Court determined that Gautier was not in violation of his probation based on the State's revocation notice, charging only that Gautier violated probation by committing murder. The Court concluded that the State had not met its burden of proving that Gautier murdered Indellicati and thus violated probation. The Court also stated that a jury would later be able to decide Gautier's guilt or innocence at a subsequent trial on the merits.

---

[1] A full outline of the factual and procedural background to this case is set forth in the Rhode Island Supreme Court's Decisions. See Gautier II, 871 A.2d 347; and State v. Gautier, 774 A.2d 882 (R.I. 2001) ("Gautier I").

The State appealed the adverse ruling in the revocation proceeding.[2] On June 29, 2001, the Supreme Court "quashed" the prior judgment and remanded. Gautier I, 774 A.2d 882. It held that it was not the trial justice's role to determine if Gautier committed murder and that, pursuant to State v. Znosko, 755 A.2d 832, 834-35 (R.I. 2000), the proper focus in the probation violation proceeding should have been whether Gautier was "lacking in the required good behavior expected and required by his probationary status." State v. Godette, 751 A.2d 742, 745 (R.I. 2000). The Supreme Court determined that the evidence presented at the revocation hearing was sufficient to adjudge Gautier a violator, because it showed that he was present during a brutal slaying and failed to notify the police after he fled the scene. Gautier I, 774 A.2d at 887 and n.3.

Finally, the Supreme Court noted that the trial justice made an "error of law" when he stated at the conclusion of the revocation hearing that a jury would ultimately be able to decide Gautier's guilt or innocence. Gautier I, 774 A.2d at 887. It held that "[u]nfortunately and unintentionally, the trial justice misconceived the consequences of an adjudication of non-violation" because State v. Chase, 588 A.2d 120 (R.I. 1991) precludes the State from relitigating guilt or innocence after a no-violation finding. Id. at 888.

Following remand, Gautier was adjudged a violator by the Superior Court and subsequently indicted for murder in 2003. Gautier unsuccessfully moved in Superior Court to dismiss the murder indictment based on State v. Chase. On April 12, 2005, the Rhode Island Supreme Court overruled State v. Chase and held that Gautier's no-violation finding did not collaterally estop a subsequent murder prosecution. Gautier II, 871 A.2d 347. Thereafter, Gautier was tried on the murder

[2] In an attempt to avoid the bite of Chase, the State, prior to its appeal, unsuccessfully sought relief from the no-violation judgment based on newly discovered evidence. State v. Gautier, C.A. No. 98-1573, 1999 WL 191758 (R.I. Super. March 31, 1999). Suggesting that the State exercised "poor judgment" in "prematurely" bringing Gautier's violation hearing, the Court denied the State's Motion to Reopen the record. Id. at *3.

indictment and found guilty by a jury of second-degree murder. He appealed his conviction (Appeal No. SU-06-0058). The appeal was docketed on March 9, 2006 and is in its early stages. Although it is unclear if Gautier is also raising collateral estoppel in his pending direct appeal, it is unlikely that the Rhode Island Supreme Court would again revisit the issue since Gautier II dealt squarely with the issue and was a unanimous opinion of the current Supreme Court, decided only eighteen months ago. Because the Supreme Court has had a full and fair opportunity to address the collateral estoppel issue presented in this Petition, the State does not argue in its Motion that Gautier's Petition is unexhausted or otherwise procedurally barred. See O'Sullivan v. Boerckel, 526 U.S. 838, 853-54 (1999). Instead, the State's Motion goes directly to the merits of the Petition.

**Discussion**

Gautier contends that his murder conviction is illegal because the State "should have been barred by the doctrine of collateral estoppel, when [it] made the decision to prosecute [him] for violating his probation on the murder allegation and losing, and then attempt to prosecute [him] for murder." Petition, pp. 7-8. The State moves to dismiss, arguing that Gautier's Petition for Habeas Corpus lacks legal merit because the decision in Gautier II "can in no measure be characterized as 'a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" State's Mem. in Supp., pp. 2-3 (quoting 28 U.S.C. § 2254(d)(1)).

**A. Standard of Review**

With the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 28 U.S.C. § 2254, Congress restricted the power of federal courts to grant habeas relief to prisoners.

This Court is guided in the consideration of Petitioner's claims by 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;...

The Court looks to McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002), for its guidance on applying the "unreasonable application" portion of § 2254(d)(1). McCambridge states that "'some increment of incorrectness beyond error is required'...[in an amount] great enough to make the [state court's] decision unreasonable in the independent and objective judgment of the federal court..." Id. at 36 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)). For example, a federal court may find a decision of a state court to be "unreasonable" if that decision is "devoid of record support for its conclusions or is arbitrary." Id. at 37 (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)). In Williams v. Taylor, 529 U.S. 362, 411 (2000), the Supreme Court noted that an "incorrect" application of federal law is not necessarily tantamount to an "unreasonable" one: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Another category of state court errors that may be remedied on federal habeas review involves unreasonable determinations of fact. See 28 U.S.C. § 2254(d)(2). Under this standard, the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary. Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st

Cir. 2001) (describing burden on habeas petitioner as a "high hurdle"). In this case, because Gautier does not argue that the factual findings of the state courts were arbitrary or unreasonable, this Court must presume the factual findings of the Rhode Island Supreme and Superior Courts to be correct. Accordingly, there are no unresolved issues of material fact present, and the Court may resolve Gautier's habeas challenge as a matter of law.

"To state a federal habeas claim concerning a state criminal conviction, the petitioner must allege errors that violate the Constitution, laws, or treaties of the United States." Evans v. Verdini, No. 05-2272, 2006 WL 2960685, *3 (1st Cir. Oct. 18, 2006) (citations omitted). "[F]ederal habeas corpus relief does not lie for errors of state law...." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Thus, the fundamental issue presented in this case is whether Gautier is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The travel of Gautier's case has not been a model of order and efficiency. The case has made two trips to the Rhode Island Supreme Court, and a third is pending. Despite the fact that Gautier was arrested on the day of Indellicati's brutal murder, it took approximately five years for an indictment to be returned and nearly seven years for the case to be tried to a jury. While the case could have been better handled, Gautier has not shown, however, that the decision in Gautier II was contrary to clearly-established Federal law.

**B. Gautier I and II**

In Gautier I, the Supreme Court held that it was not the trial justice's "role" at the revocation proceeding to determine whether or not Gautier murdered Indellicati. 774 A.2d at 887. As a result, it "quashed," i.e., voided, the violation judgment of the Superior Court in Gautier's revocation

proceeding and remanded for "redetermination." Id. at 888. The Court in Gautier I also indicated that the issue of reversing State v. Chase was "not currently before" the Court, and it declined to reconsider its ruling in State v. Chase until "the parties [had] been given an opportunity to fully brief that issue." Id. at 888 n.4.

In Gautier II, the Supreme Court, after full briefing, addressed the collateral estoppel issue and overruled its 1991 decision in State v. Chase. The Supreme Court's decision was not simply an arbitrary decision to open the door to prosecute Gautier for murder. Rather, it was based on an evolution of Rhode Island case law after 1991 regarding the purpose of probation revocation proceedings, and it brought Rhode Island in line with the position of a majority of jurisdictions which have considered the issue. Following its 1991 decision in State v. Chase, the Supreme Court in State v. Godette, 751 A.2d 742 (R.I. 2000), and State v. Znosko, 755 A.2d 832 (R.I. 2000), clarified the proper role of a trial justice in a probation revocation proceeding. It "established [in both of these cases] that a hearing justice sitting in a probation-revocation hearing should not decide the merits of the underlying charge upon which the purported violation is based." Gautier II, 871 A.2d at 357. In addition, the Supreme Court in Gautier II noted that its decision in Gautier I to quash the violation judgment nullified, as a matter of law, any findings of fact arising out of that judgment. Id. at 354. Thus, there were "no longer any existing factual findings that could bar the state from relitigating Gautier's culpability for...murder." Id.

**C. Double Jeopardy**

The Double Jeopardy clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." "This protection applies both to successive punishments and to successive prosecutions for the same criminal offense."

United States v. Dixon, 509 U.S. 688, 696 (1993). It is well established that double jeopardy does not bar a criminal prosecution for an offense which also serves as the basis for probation revocation. United States v. Soto-Olivas, 44 F.3d 788, 789 (9th Cir. 1995). "The federal appellate decisions that address this issue hold uniformly that double jeopardy does not apply to revocation of parole." Wilson v. Mitchell, 61 Fed. Appx. 944, 947 (6th Cir. 2003) (citing United States v. Pettus, 303 F.3d 480, 487 (2nd Cir. 2002); United States v. Hanahan, 798 F.2d 187, 189 (7th Cir. 1986); and United States v. Miller, 797 F.2d 336, 340-41 (6th Cir. 1986)). In Gautier II, the Supreme Court rejected Gautier's double jeopardy claim in line with this federal precedent.[3] It held that jeopardy does not "attach" in a probation revocation proceeding because it is not a proceeding to convict the individual of a new criminal offense. Gautier II, 871 A.2d at 361. Rather, it is "considered a continuation of the original prosecution for which probation was imposed...." Id. The Supreme Court's double jeopardy analysis in Gautier II is not contrary to, or an unreasonable application of, clearly established federal law. Thus, Gautier is not entitled to habeas corpus relief on that ground.

### D. Collateral Estoppel

Gautier's Petition focuses on the doctrine of collateral estoppel. "Collateral estoppel was expressly incorporated into the Double Jeopardy Clause in the landmark Supreme Court case of Ashe v. Swenson, 397 U.S. 436 (1970)." United States v. Crispino, 586 F. Supp. 1525, 1529 (D.N.J. 1984). Collateral estoppel is a subset of the doctrine of double jeopardy. United States v. Collazo-Aponte, 216 F.3d 163, 198 (1st Cir. 2000). It bars "relitigation" of a factual or legal issue decided

[3] In Lawrence v. State, 839 S.W.2d 10, 15 (Ark. Ct. App. 1992), the Court, citing both state and federal precedent, stated that "[a] majority of courts which have specifically addressed this issue have also found that double jeopardy does not apply to revocation proceedings."

in previous litigation between the parties on the same or a different claim. Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994).

In order for the doctrine of collateral estoppel to bar a successive civil or criminal proceeding, there must generally be (1) an identity of issues; (2) a valid and binding final judgment on the issue; and (3) an identity of parties. See United States v. Gomez-Rosario, 418 F.3d 90, 106 (1st Cir. 2005); and Grella, 42 F.3d at 30. It is undisputed that there was an identity of parties among the probation revocation proceeding and the criminal prosecution, i.e., the State and Gautier. The other two elements are not present in this case.

First, as a matter of state law, the Supreme Court in Gautier II effectively determined that there was no valid and binding final judgment in the revocation proceeding. Although the trial justice in the revocation proceeding initially found for Gautier, the Supreme Court in Gautier I "quashed," or voided, that judgment and remanded for "redetermination." Thus, that initial decision "is a nullity and has no preclusive effect." State v. Santiago, 847 A.2d 252, 254 (R.I. 2004); see also Cravalho v. Maine, 300 F. Supp. 2d 189, 197 (D. Me. 2004) (denying habeas relief under § 2254 on collateral estoppel grounds because denial of probation revocation is not a final judgment on defendant's guilt or innocence on same conduct). Gautier has not shown that the valid and final judgment aspect of the decision in Gautier II was contrary to federal precedent. In fact, in United States v. Miller, 797 F.2d at 341, the Sixth Circuit Court of Appeals directly held that "[t]he decision of a [federal] district court in a probation revocation hearing is not a 'valid and final judgment' on the probationer's involvement in alleged criminal activities, and the refusal to revoke probation does not collaterally estop a future prosecution on the same crimes."

Second, by overruling State v. Chase, the Supreme Court in Gautier II determined that there is not an identity of issues between a revocation proceeding and a related criminal prosecution. In refusing to bar relitigation of a criminal charge following a revocation determination adverse to the State, the Court recognized that there are "inherent and important [procedural and substantive] differences" between the two proceedings. Gautier II, 871 A.2d at 358; see also United States v. Correa-Torres, 326 F.3d 18, 23 (1st Cir. 2003) (noting, in waiver context, that revocation proceedings are "more informal than criminal prosecutions."). It thus decided to "join the majority of courts that have addressed this issue" and it agreed that "[p]ractical public policy requires that new criminal matters, when charged in the criminal justice system, must be permitted to be there decided, unhampered by any parallel [probation-revocation proceeding]...." Gautier II, 871 A.2d at 359 (quoting State v. Dupard, 609 P.2d 961, 965 (Wash. 1980)).

The Rhode Island Supreme Court's decision to overrule State v. Chase and adopt the majority rule on this collateral estoppel issue simply does not entitle Gautier to relief under 28 U.S.C. § 2254. In Cravalho v. Maine, 300 F. Supp. 2d 189, the District Court denied habeas corpus relief to a state inmate who was convicted by a jury of a criminal offense after the state had lost an earlier related probation revocation proceeding. The District Court held that collateral estoppel did not, as a matter of law, bar the later prosecution. Id. at 197. Similarly, in State v. McDowell, 699 A.2d 987 (Conn. 1997), the Connecticut Supreme Court held that the state was not collaterally estopped from relitigating in a prosecution factual issues previously determined at a revocation hearing. It noted the "reality that the state...had no incentive to present its best evidence at the revocation proceeding where there was a lower standard of proof" and, because the state's investigation may not yet be completed, "evidence may be acquired after the revocation proceeding

and before the criminal trial." Id. at 990. Although it recognized that collateral estoppel serves important goals of judicial efficiency and economy, the Court concluded that those goals "must give way to the demand for truth." Id. at 991.

In this case, Gautier's revocation proceeding concluded approximately six weeks after Indellicati's murder and lasted only two days. Also, it appears that the State's investigation was not complete at that point, as it later unsuccessfully sought to reopen the record to present "newly discovered" evidence. See State v. Gautier, No. 98-1573, 1999 WL 191758 (R.I. Super. March 31, 1999). The Supreme Court's decision in Gautier II did not deprive Gautier of any Federal or Constitutional rights. It simply preserved the right of the victim's family to have his alleged murder tried by a jury of his peers. While the decision denied Gautier the potential of sidestepping a murder prosecution on technical grounds, it also preserved his constitutional right to a trial by jury. Gautier has appealed his 2005 conviction to the Rhode Island Supreme Court and maintains rights to challenge the legality of his jury trial on direct and collateral appeal. The legality of the conduct of Gautier's trial is not currently before this Court. The only issue presented in this Petition is the Supreme Court's refusal in Gautier II to dismiss Gautier's indictment for murder on collateral estoppel grounds. Gautier has not shown that that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Thus, Gautier is not entitled to habeas corpus relief.

## Conclusion

For the foregoing reasons, I recommend that the State's Motion to Dismiss (Document No. 12) be GRANTED and Gautier's Petition for Habeas Corpus (Document No. 1) be DISMISSED WITH PREJUDICE and that the District Court enter final judgment in favor of Defendants.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72(c). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 23, 2006